UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| STERLING PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> RITTECH SERVICE & SALES, INC., <br><br> Defendant. | Case No. 11-CV-561-JPS <br><br><br> ORDER |

On June 10, 2011, the plaintiff, Sterling Products, Inc. ("Sterling") filed a complaint against the defendant, Rittech Service & Sales, Inc. ("Rittech"), alleging claims for a breach of contract, quantum meruit, and unjust enrichment. (Docket #1). On July 28, 2011, the defendant filed, pursuant to Fed.R.Civ.P. 12(b)(3), a motion to dismiss Sterling's complaint on the grounds of improper venue. (Docket #5). On August 22, 2011, Sterling responded to Rittech's motion to dismiss, as well as filed a motion to stay the proceedings pending arbitration. (Docket #14). The parties have fully briefed the court on the relevant issues related to the motion to dismiss and the motion to stay the proceedings pending arbitration, and as a result, the court is prepared to rule on the motions.

BACKGROUND

Sterling is a Delaware corporation whose principal place of business is in Wisconsin. (Compl. ¶ 11). Rittech is a Michigan corporation whose principal place of business is in Michigan. (Compl. ¶ 12). According to Sterling's complaint, between April of 2007 and May of 2008, Rittech entered into agreements with Sterling for Sterling to manufacture and deliver to Rittech various plastic products, pursuant to ten purchase orders, in

exchange for Rittech's agreement to pay for those products. (Compl. ¶ 4-5). Rittech has allegedly only made partial payment to Sterling for the products ordered, and thus Sterling has brought the present lawsuit to recover the remaining amounts due. (Compl. ¶ 9).

In support of its motion to dismiss, Rittech argues that venue for this action is exclusively vested in the state courts of Michigan pursuant to a forum-selection clause appended to purchase orders that are the subject of this contract dispute. On the other hand, Sterling argues that the purchase order terms and conditions, including the forum-selection clause, are not a part of the parties' contract. Instead, Sterling contends that the parties' contractual relationship is governed by a Sales Agent Agreement ("Sales Agreement") entered into by the parties on June 19, 2003. (Docket #14-2). Furthermore, Sterling argues that pursuant to the Sales Agreement, the parties agreed to arbitrate any and all disputes arising out of or relating to the Sales Agreement. Accordingly, Sterling requests that the court stay these proceedings pending arbitration. In response, Rittech notes that the Sales Agreement was terminated by Sterling on March 9, 2009, that Sterling's complaint fails to reference the Sales Agreement, but rather expressly alleges that the purchase orders form the basis for its claims against Rittech, and that even if the court were to find that a right to arbitration existed pursuant to the Sales Agreement, that Sterling waived any right to arbitrate the current dispute as it filed this lawsuit in federal court as well as a nearly identical lawsuit in Michigan state court in 2009.

DISCUSSION

Here, to resolve the motion to dismiss and the motion to stay pending arbitration, the main question is not whether or when the parties entered into

a binding contract, because they clearly did so at some point. Rather, the question is: What were the terms of their contract? On the one hand, the Sales Agreement, signed by both parties in 2003, contains an arbitration clause, a Wisconsin choice-of-law provision, a provision requiring that any modifications to the Sales Agreement be made by a signed writing, as well as an anti-waiver provision, stating that no waiver of any provision of the Sales Agreement will be valid unless in writing and signed by the party against whom it is sought to be enforced. (Sales Agent Agreement ¶¶ 10.02, 10.05, 10.08, 10.09) (Docket #14-2).[1] Sterling argues that the Sales Agreement controls the contractual relationship between the parties. On the other hand, Rittech argues that the terms and conditions appended to purchase orders it sent to Sterling for Sterling to manufacture and deliver to Rittech plastic products modified the Sales Agreement. The bottom of every purchase order sent by Rittech to Sterling stated "Please see attached terms and conditions." (Rittman Aff, ¶ 4, Ex. B) (Docket #'s 7-1, 7-2). According to Rittech, each purchase order was accompanied by a copy of the terms and conditions,

---

[1] Rittech asserts that Sterling never references the Sales Agreement in its complaint and, therefore, Sterling's claims arise under the purchase order terms and conditions, not the Sales Agreement. While the Seventh Circuit has repeatedly declared, in diversity cases: "plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum," *Anderson v. Bayer Corp.*, 610 F.3d 390, 393 (7th Cir. 2010) (citing *Garbie v. DaimlerChrysler Corp.,* 211 F.3d 407, 410 (7th Cir. 2000) and *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)), when considering a Rule 12(b)(3) motion for improper venue, a district court is not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment. *Continental Cas. Co. v. American Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). Thus, the court finds it proper to consider the Sales Agreement despite Sterling's failure to reference the document in its complaint.

though Sterling disputes this assertion. (Breslin Aff. ¶ 8). The terms and conditions contain a forum-selection clause designating the state courts of Michigan as the proper venue for any dispute arising out of or in connection with the purchase orders. (Rittman Aff., Ex. A) (Docket #7-1). The terms and conditions also contained a Michigan choice-of-law provision. (*Id.*).

As an initial matter, the court notes that the two writings at issue here – the Sales Agreement and the purchase order terms and conditions – differ on what state's law should govern. However, because both Michigan and Wisconsin have adopted the Uniform Commercial Code ("UCC") for contracts involving the sale of goods, the court's conclusions would be the same under the law of either state. Accordingly, the court will apply Wisconsin law. *See Sharp v. Case Corp.*, 227 Wis.2d 1, 10-11, ¶ 17, 595 N.W.2d 380 (1999) (When examining a conflict of laws issue, "[i]f the laws of the two states are the same, we apply Wisconsin law.").

Moving to the question of what terms are part of the contract, the court finds relevant section 2-209(2) of the UCC, adopted by Wisconsin statute § 402.209(2), which deals with contractual provisions excluding modification except by written consent. In this case, the Sales Agreement contains a provision that prohibits any modifications absent the written signed consent of both parties. Wisconsin Statute § 402.209(2) provides that "[a] signed agreement which excluded modification or rescission except by a signed writing cannot be otherwise modified or rescinded, ..." Wis.Stat. § 402.209(2). Here, there was no signed modification and, therefore, Sterling claims that the Sales Agreement could not be modified by the forum-selection clause in Rittech's purchase order terms and conditions. However, an attempt at modification, though it does not meet the requirements of

§ 402.209(2), can operate as a waiver. *See* Wis. Stat. § 402.209(4). Rittech argues that Sterling's conduct in this case constituted an attempt to modify the Sales Agreement to replace the arbitration provision with the Michigan forum-selection clause and that, under section 2-209(4), this attempted modification operated as a waiver of the Sales Agreement's requirement that any modifications be in writing.

"Waiver involves an inquiry into the intent of the parties...."*Allen O'Hara, Inc. v. Barrett Wrecking*, 898 F.2d 512, 518 (7th Cir. 1990). Moreover, "the intent to waive may be inferred as a matter of law from the conduct of the parties...." *Christensen v. Equity Livestock Sale*, 134 Wis.2d 300, 303, 396 N.W.2d 762 (Wis. 1986)(citing *Hanz Trucking, Inc. v. Harris Bros. Co.*, 29 Wis.2d 254, 265, 138 N.W.2d 238, 244 (Wis. 1965)). In analyzing Wis. Stat. § 402.209, the Seventh Circuit Court of Appeals has also concluded that "[a]n attempted modification by words or conduct ... operates as a waiver only if the party seeking to enforce the attempted modification, reasonably relied on the attempted modification." *Am. Suzuki Motor Corp. v. Kummer, Inc.,* 65 F.3d 1381, 1386 (7th Cir.1995) (citing *Wisconsin Knife Works v. Nat'l Metal Crafters,* 781 F.2d 1280, 1286-87 (7th Cir. 1986)) (additional citation omitted).[2] Furthermore, the Seventh Circuit has approved of the use of Wisconsin case law in interpreting Wis. Stat. § 402.209(4), which holds that "the acts which are relied upon to modify a prior contract must be unequivocal in their character." *Am. Suzuki Motor Corp.,* 65 F.3d at 1386 (quoting *Nelsen v. Farmers Mut. Auto. Ins. Co.,* 4 Wis.2d 36, 90 N.W.2d 123, 134 (1958)). "Acts which are

---

[2]In *Royster-Clark, Inc. v. Olsen's Mill, Inc.*,290 Wis.2d 264, 714 N.W.2d 530 (Wis. 2006), the Wisconsin Supreme Court stated that it has never held that reliance is necessary to effect a waiver, although it noted that reliance had occurred in that particular case.

ambiguous in their character, and which are consistent either with the continued existence of the original contract, or with a modification thereof, are not sufficient to establish a modification." *Id.*

In this case, the court is unable to find that Sterling's actions were a clear and unequivocal modification of the contract, and thus, Sterling did not waive the "no modification absent written consent" provision of the Sales Agreement. First, Rittech claims that because Sterling fulfilled Rittech's orders, Sterling accepted all of the additional terms and conditions purportedly attached to those orders. However, simply filling the orders does not unequivocally demonstrate that Sterling intended to modify the contract terms pertaining to forum-selection. This is especially so because there is a dispute over whether Sterling actually received the additional terms and conditions with the purchase orders. Thus, Sterling may not have had any notice of how the terms and conditions differed from those agreed to by the parties in the Sales Agreement. As such, its conduct in filling the orders could be construed as being entirely consistent with the Sales Agreement or as acquiescent to the new terms and conditions. Because Sterling's conduct – and thus, its intent – are ambiguous in this sense, the court cannot find that Sterling's act of filling the purchase orders sufficiently establishes a modification of the Sales Agreement.

Next, Rittech claims that Sterling accepted Rittech's Michigan forum-selection clause when it filed suit against Rittech in Michigan state court in 2009. However, again, the court finds that Sterling's conduct in this context is open to multiple interpretations. For instance, even though Sterling first sued Rittech in Michigan state court, it is not immediately clear whether the filing of that lawsuit was done in accordance with the forum-selection clause

contained in the purchase order terms and conditions or whether Sterling filed the lawsuit in that jurisdiction for some other reason. In support of its current position, Sterling asserts that it filed the initial lawsuit in Michigan state court because it wanted to avoid any possible personal jurisdiction dispute that may have arisen had Sterling filed the lawsuit in Wisconsin. Though this explanation is not particularly convincing, its mere existence denotes the ambiguity that attaches to Sterling's decision to file its initial lawsuit in Michigan state court. Therefore, because Sterling's actions are ambiguous in their character, and could be viewed either as consistent with the continued existence of the Sales Agreement or with a modification thereof, these actions are not sufficient to establish a modification. Accordingly, under the facts here, the court concludes that no attempted modification occurred and, in turn, no waiver occurred of the requirement that all modifications of the Sales Agreement be signed and in writing.[3]

Because the court finds that Sterling did not waive the requirement that modifications to the Sales Agreement required signed approval, the Michigan forum-selection clause is not valid. Accordingly, the court must deny Rittech's Rule 12(b)(3) motion to dismiss on the grounds of improper venue. Having found that the Sales Agreement was not modified by the purchase order terms and conditions, the court must now determine the effect of the arbitration provision contained in the Sales Agreement and whether Sterling waived its right to arbitrate by filing suit in court.

---

[3]The court further notes that Rittech has not shown it reasonably relied on the attempted modification, yet another reason for the court to find that no waiver occurred.

The Federal Arbitration Act (FAA) declares that, as a matter of federal law, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a presumption in favor of arbitrability: "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

"A party may waive a contractual right to arbitrate expressly or implicitly." *Halim v. Great Gatsby's Auction Gallery,* 516 F.3d 557, 562 (7th Cir. 2008). To determine whether a party has waived arbitration, courts "examine the totality of the circumstances and determine whether ... the party ... has acted inconsistently with the right to arbitrate." *Sharif v. Wellness Int'l Network, Ltd.,* 376 F.3d 720, 726 (7th Cir. 2004). "Although several factors may be considered in determining waiver, diligence or the lack thereof should weigh heavily in the decision—'did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?'" *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.,* 304 F.3d 753, 756 (7th Cir. 2002) (emphasis removed) (quoting *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 391 (7th Cir. 1995)). Additionally, a plaintiff presumptively waives its right to enforce an arbitration clause when it files suit in court, even if the opposing party suffered no prejudice. *See Duferco Steel Inc. v. M/V Kalisti,* 121 F.3d 321, 326 (7th Cir. 1997); *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d at 390-91.

Here, Sterling argues that, even though it filed lawsuits against Rittech in both state and federal court before seeking to arbitrate the dispute, it has

not waived its right to arbitration. First, Sterling attempts to distinguish this case from the Seventh Circuit's decision in *Duferco Steel* by arguing that, in that case, waiver was only found because neither party moved the district court to enforce their right to arbitration. However, this reading of *Duferco Steel* is inaccurate. Rather, in that case, the Seventh Circuit held that the plaintiff, by not having sought to arbitrate its dispute during the time allotted in the parties' agreement, had waived its right to recovery by the terms of that agreement. Moreover, Sterling's reliance on the Seventh Circuit's opinion in *Cabinetree* is also unavailing. In *Cabinetree*, the court noted that it could envision situations in which invocation of judicial process would not "signify an intention to proceed in court to the exclusion of arbitration," 50 F.3d at 390-91. For example, the court stated "there might be doubts about arbitrability, and fear that should the doubts be resolved adversely the statute of limitations might have run." *Id.* Sterling contends that Rittech's motion to dismiss presents doubts about arbitrability. Specifically, Sterling contends that if the issues presented by Rittech's motion to dismiss were taken directly to the arbitrator in the first instance, Sterling would have run the risk of its claims being barred by the statute of limitations if a decision in Rittech's favor was rendered after the statute expired. However, this argument is entirely speculative. In fact, in Wisconsin and Michigan, there is a six-year statute of limitations for breach of contract claims. Wis. Stat. § 893.43; Mich. Comp. Laws § 600.5807(8). Here, the alleged breaches of contract occurred in 2007 and 2008. Sterling first filed suit against Rittech in 2009 and again in 2011. Even now, at the very least, Sterling would still have two years before its breach of contract claims could be barred by the statute of limitations. This would be more than enough time for an arbitrator to take

Page 9 of 12

Case 2:11-cv-00561-JPS   Filed 09/29/11   Page 9 of 12   Document 20

up the issues at hand. Thus, Sterling's argument in this respect is not applicable.

Indeed, it seems to this court that there is no plausible interpretation of the reason for the twenty- month delay between Sterling's filing of its state lawsuit and the filing of its motion to stay the proceedings pending arbitration in this federal lawsuit except that Sterling initially decided to litigate its dispute in court, and that later, it changed its mind for whatever reason and decided it would be better off in arbitration. Thus, as in *Cabinetree*, the plaintiff's delay provides powerful evidence that it elected to proceed in a judicial forum and waived its right to arbitration. *See Cabinetree*, 50 F.3d at 391 (holding that a party waived its right to arbitrate when it removed a case to federal court and waited eight months before requesting arbitration).

Lastly, Sterling relies on an anti-waiver provision found in the Sales Agreement to argue that it could not have waived its right to arbitrate. While the court has not found any Seventh Circuit authority on point, other circuits have found that a "no waiver" clause, such as the one at issue here, does not override a court's ability to find that a party – through invocation of judicial process – has waived its right to arbitrate. *See Republic Ins. Co. v. PAICO Receivables, LLC,* 383 F.3d 341, 348 (5th Cir. 2004) (holding that a "no waiver" clause does not override district court's inherent authority to control its own docket and to find that a party, through extensive litigation, has waived its right to arbitrate); *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 776 (D.C.Cir. 1987) ("To give Edwards a second bite at the very questions presented to the court for disposition squarely confronts the policy that arbitration may not be used as a strategy to manipulate the legal process."); *S & R Co. of Kingston v. Latona Trucking, Inc.,* 159 F.3d 80, 86 (2d

Cir. 1998) ("the presence of a 'no waiver' clause does not alter the ordinary analysis undertaken to determine if a party has waived its right to arbitration."); *see also* Richard A. Lord, Williston on Contracts § 39:36 (4th ed. 2000) ("The general view is that a party to a written contract can waive a provision of that contract by conduct expressly or surrounding performance, despite the existence of a so-called anti-waiver or 'failure to enforce' clause in the contract .").

In this dispute, despite the anti-waiver provision, and although extensive litigation has not necessarily occurred – in the sense that no substantive rulings have been made and no discovery has taken place – the court still finds that Sterling's actions show a clear intention to waive its right to arbitrate. Particularly troubling is the fact that Sterling first filed suit in Michigan state court and, when that case was dismissed because of Sterling's lack of legal capacity to sue in Michigan, it waited approximately one year before filing a similar complaint in this court. Then, only after Rittech filed a motion to dismiss on improper venue grounds did Sterling determine it was time to exercise its right to arbitrate the matter. As such, though substantively this dispute has not been litigated extensively, procedurally it has. To allow Sterling to invoke the arbitration clause at this juncture merely because of an anti-waiver provision, would thwart, rather than effectuate the principle that "a party may not use arbitration to manipulate the legal process and in that process waste scarce judicial resources." *Gray Holdco, Inc. v. Cassady*, 2011 WL 3606864, at *7 (3d Cir. Aug. 17, 2011). Accordingly, the court finds that despite the anti-waiver provision in the parties' Sales Agreement, Sterling has waived its right to arbitrate because of its litigation

conduct. Consequently, the parties' already-protracted dispute will remain before this court.

Accordingly,

IT IS ORDERED that defendant's Motion to Dismiss (Docket #5) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that plaintiff's Motion to Stay Pending Arbitration (Docket #14) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 29th day of September, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge